IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| REGIONAL LOCAL UNION NOS. 846 and 847, International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, AFL-CIO; REGIONAL DISTRICT COUNCIL WELFARE PLAN AND TRUST, *f/k/a LOCAL 846 REBAR WELFARE TRUST*, By and Through Its Board of Trustees; REGIONAL DISTRICT COUNCIL RETIREMENT PLAN AND TRUST, *f/k/a REBAR RETIREMENT PLAN AND TRUST*, By and Through its Board of Trustees; REGIONAL DISTRICT COUNCIL TRAINING TRUST, *f/k/a LOCAL 846 TRAINING TRUST*, By and Through Its Board of Trustees; and REGIONAL DISTRICT COUNCIL VACATION TRUST FUND, *f/k/a LOCAL 846 VACATION TRUST*, By and Through Its Board of Trustees,<br><br>        Plaintiffs,<br><br>        v.<br><br>TRITON STEEL, LLC,<br><br>        Defendant. | Case No. 3:24-cv-02072-JR<br><br>FINDINGS AND RECOMMENDATION |

RUSSO, Magistrate Judge:

Plaintiffs Regional Local Union Nos. 846 and 847 ("Plaintiff Unions"), Regional District Council Welfare Plan and Trust, Regional District Council Retirement Plan and Trust, Regional District Council Training Trust, and Regional District Council Vacation Trust Fund (collectively "Plaintiff Trusts") move for default judgment against defendant Triton Steel, LLC pursuant to Fed. R. Civ. P. 55(b). For the reasons stated below, plaintiffs' motion is granted.

Page 1 – FINDINGS AND RECOMMENDATION

## BACKGROUND

This action arises out of the Employee Retirement Income Security Act ("ERISA") and Labor Management Relations Act.[1] Defendant entered into a collective bargaining agreement ("CBA") with Plaintiff Unions which requires employers to submit: (1) "dues and working assessments and a list of covered employees each month"; (2) "contributions and monthly reports reflecting the hours worked by its employees to the Regional District Council Fringe Benefit Funds"; and (3) "contributions to the Ironworkers Management Progressive Action Cooperative Trust ('IMPACT')." Winter Aff. ¶¶ 6-8 (doc. 22-5); Winter Aff. Ex. 1 (doc. 22-6).

Defendant also agreed to be bound by the "terms of the various trust and plan documents as they currently exist, and as they may be amended by the trustees." Winter Aff. Ex. 1, at 11 (doc. 22-6). The trust agreements delineate monetary consequences for failure to contribute and give Plaintiff Trusts the authority to audit employers. Winter Aff. Ex. 6 (doc. 22-11).

Plaintiffs initiated this action on December 16, 2024, and filed a certificate of service requiring defendant to answer or respond to the complaint by January 9, 2025. On January 13, 2025, the Court granted plaintiffs' motion for entry of default.

Pursuant to their first motion for default judgment filed on January 16, 2025, plaintiffs asserted that defendant failed to make timely fringe benefit contributions between January 2020 and December 2022 which, pursuant to the CBA and trust agreements, entitled them to the delinquent amounts plus interest at the rate of 1.5% per month, liquidated damages, accounting

---

[1] As the Court previously denoted, "defendant is an 'employer,' Plaintiff Unions are 'employee organizations,' Plaintiff Trusts are 'employee benefits plans,' and the board of trustees, representing Plaintiff Trusts, are 'fiduciaries' under ERISA," and plaintiffs "are authorized to maintain this action under the civil enforcement provision of ERISA." *Reg'l Loc. Union Nos. 846 & 847, Int'l Assoc. of Bridge, Structural, Ornamental & Reinforcing Iron Workers, AFL-CIO v. Triton Steel, LLC*, 2025 WL 1225398, *1 n.1 (D. Or. Mar. 31), *adopted by* 2025 WL 1221020 (D. Or. Apr. 28, 2025) (citations and internal brackets omitted).

Page 2 – FINDINGS AND RECOMMENDATION

fees, and attorney fees and costs. *See, e.g.*, Winter Aff. ¶¶ 9-12 (doc. 11-5); Winter Aff. Ex. 6 (doc. 11-11). In addition, plaintiffs sought an order compelling a subsequent accounting beginning January 1, 2023, to the present to determine defendant's compliance and calculate additional delinquent amounts.

On April 28, 2025, the Court granted plaintiff's motion and entered a partial default judgment against defendant in the amount of $13,999.81. *See generally Reg'l Loc. Union Nos. 846 & 847*, 2025 WL 1221020; Partial Default J. (doc. 16). On August 19, 2025, plaintiffs filed the present motion, seeking default judgment in relation to the amounts owed pursuant to the subsequent audit.

## STANDARDS

The decision to grant or deny a motion for default judgment is within the discretion of the court. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 852 (9th Cir. 2007). The court must consider seven factors, often referred to as the *Eitel* factors, in resolving such a motion: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Upon the entry of default, the court accepts "the well-pleaded factual allegations in the complaint as true." *DIRECTV, Inc.*, 503 F.3d at 854. However, the court "does not accept as admitted facts that are not well-pleaded, conclusions of law, or facts relating to the amount of damages." *United States v. RiverCliff Farm, Inc.*, 2017 WL 3388172, *1 (D. Or. Aug. 7, 2017) (citations omitted); *see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) ("[t]he general rule of law is that upon default the factual allegations of the complaint,

Page 3 – FINDINGS AND RECOMMENDATION

except those relating to the amount of damages, will be taken as true") (citation and internal quotations omitted). In other words, "[i]t is well settled that a default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

## DISCUSSION

Plaintiffs seek $24,029.44 in delinquent contributions from January 1, 2023, through December 31, 2024, plus $3,647 for the cost of the second audit. Vivirito Aff. ¶¶ 3-4 (doc. 22-3); Vivirito Aff. Ex. 1, at 2 (doc. 22-4). Plaintiffs also seek supplemental attorney fees in the amount of $2,419. Evans Aff. ¶¶ 4-7 (doc. 22-1). The Court first addresses the appropriateness of default judgment pursuant to the *Eitel* factors, and then assesses damages and any reasonable attorney fees. *Stross v. Smith Rock Masonry Co.*, 2021 WL 2453388, *2 (D. Or. June 16, 2021).

### I.   *Eitel* Factors

The Court accepts plaintiffs' well-pleaded factual assertions as true because default has been entered against defendant. And the Court concludes that the *Eitel* factors, on balance, support granting plaintiffs' motion.

The first factor "considers whether a plaintiff would suffer prejudice if default judgment is not entered, and any potential prejudice to the plaintiff favors granting a default judgment." *Contractors Bonding & Ins. Co. v. Radian Constr. Corp.*, 2021 WL 5927682, *2 (D. Or. Nov. 29, 2021), *adopted by* 2021 WL 5925962 (D. Or. Dec. 15, 2021) (citation and internal quotations omitted). Because plaintiffs have no other recourse for recovery without a default judgment, the first factor favors granting plaintiffs' motion.

The second and third factors – the merits of plaintiffs' claims and the sufficiency of their complaint – also favor default judgment. The Ninth Circuit has directed that the second and third

factors, taken together, require the dispositive pleading to "state a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Here, the complaint and supporting documents establish that defendant agreed to be bound to the CBA and trust agreements, and then subsequently failed to fulfill the obligations outlined therein. *See, e.g.*, Winter Aff. ¶¶ 5-13 (doc. 22-5); *see also Masonry Indus. Admin., Inc. v. Chris Lee Masonry, Inc.*, 2016 WL 3396939, *2 (D. Or. June 14, 2016) ("Plaintiff submitted reports and affidavits showing that Defendants failed to make contributions as required by the agreements; therefore, Plaintiff states a valid ERISA claim").

The fourth factor considers the sum of money at stake in this action. The damages here are neither nominal nor particularly substantial, as plaintiffs seek nearly $28,000 (along with attorney fees). *Cf. Masonry Indus. Admin., Inc.*, 2016 WL 3396939 at *2 (in weighing the fourth *Eitel* factor, over $54,000 in damages was "appropriate considering the number of workers the Defendants employed and the number of months Defendants failed to make contributions"). The Court concludes that the fourth factor is neutral.

The fifth factor considers the possibility of a dispute concerning material facts. As discussed above, defendant was properly served but has not appeared in this case. The Court must thus accept as true plaintiffs' well-pleaded factual allegations that defendant violated binding agreements and ERISA by failing to make contributions and to supply monthly reporting. Moreover, plaintiffs support their request for damages with documentation of a payroll examination cataloging amounts owed by defendant pursuant to the CBA and trust agreements. Vivirito Aff. ¶¶ 2-3 (doc. 22-3); Vivirito Aff. Ex. 1, at 2-6 (doc. 22-4). Because the complaint is

bolstered by an audit,[2] "the possibility of a dispute over material facts is low, if it exists at all." *Trs. of Emp. Painters' Tr. v. Silverton Glass, LLC*, 2021 WL 2046447, *6 (D. Or. Apr. 28), *adopted by* 2021 WL 2043212 (D. Or. May 21, 2021).

Finally, the sixth and seventh factors favor granting plaintiffs' motion. The sixth factor considers whether defendant's default was due to excusable neglect. The record demonstrates that defendant was served but has not appeared, or otherwise indicated an intent to do so. As to the seventh factor, "default judgments are disfavored because cases should be decided on their merits whenever reasonably possible [but] the policy . . . favoring decisions on the merits does not weigh against default judgment because [the defendant's] failure to appear makes a decision on the merits impractical." *Contractors Bonding & Ins. Co.*, 2021 WL 5927682 at *3 (citations and internal quotations and brackets omitted). In sum, after balancing the *Eitel* factors, the Court concludes that default judgment should be entered.

## II.     Relief

Pursuant to 29 U.S.C. § 1132(g)(2), if a judgment is entered in favor of the plaintiff, the "court shall award":

    (A) the unpaid contributions,

    (B) interest on the unpaid contributions,

    (C) an amount equal to the greater of-

        (i) interest on the unpaid contributions, or

---

[2] The accounting firm engaged by plaintiffs observed a distinction between its payroll examination and a formal audit. That is, the accounting firm did not conduct an audit "which would be the expression of an opinion on the employer's fulfillment of the requirements of the Collective Bargaining and Trust Agreements," but rather determined "whether contributions to the Plan were made in accordance with the Collective Bargaining and Trust Agreements." Vivirito Aff. Ex. 1, at 1 (doc. 22-4). This distinction appears to be technical such that the Court uses the term "audit" colloquially in accordance with plaintiffs.

Page 6 – FINDINGS AND RECOMMENDATION

> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). An award under this section is "mandatory and not discretionary" when (1) the employer is delinquent at the time the action is filed; (2) the district court enters a judgment against the employer; and (3) a binding agreement provides for such an award. *Nw. Adm'rs, Inc. v. Alberton's, Inc.*, 104 F.3d 253, 257-58 (9th Cir. 1996) (citations omitted).

Because these requirements are met in the present case, defendant shall make all unpaid contributions, interest, and liquated damages, along with auditor and attorney fees.

### A. Damages

As stated above, defendant is bound by the CBA and trust agreements, which set forth required contributions and penalties for failure to make such contributions. Plaintiffs engaged the accounting firm WithumSmith+Brown, PC to conduct a payroll examination of defendant to determine "if the required contributions have been made [from] January 1, 2023 through December 31, 2024." Vivirito Aff. ¶¶ 2-3 (doc. 22-3). This payroll examination revealed defendant owes $18,005.75 in fringe benefit contributions, $2,422.54 in interest, $3,601.15 in liquidated damages, and $3,647 for the cost of the examination. Vivirito Aff. Ex. 1, at 2 (doc. 22-4). The Court finds that plaintiffs are entitled to $27,676.44 in damages.

### B. Attorney Fees

According to the CBA and trust agreements, delinquent employers must pay attorney fees "as are necessary if litigation is filed to collect said delinquent amounts." Winter Aff. ¶ 11 (doc.

22-5); Winter Aff. Ex. 1, at 11 (doc. 22-6); *see also* 29 U.S.C. § 1132(g)(1) ("the court in its discretion may allow a reasonable attorney's fee and costs of action to either party"). In determining reasonableness in the context of a motion for default judgment, the court employs the "'lodestar method,' which multiplies the number of hours the prevailing party reasonably expended on litigation by a reasonable hourly rate." *Stross*, 2021 WL 2453388 at \*4. A reasonable rate for legal services is "calculated according to the prevailing market rates in the relevant community." *McElmurry v. U.S. Bank Nat'l Ass'n*, 2008 WL 1925119, \*3 (D. Or. Apr. 30, 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "This District considers the most recent Oregon State Bar Economic Survey . . . as its 'initial benchmark' in determining whether hourly billing rates are reasonable." *Prison Legal News v. Umatilla Cnty.*, 2013 WL 2156471, \*4 (D. Or. May 16, 2013) (citations omitted).

Here, plaintiffs seek $2,419 in attorney fees for legal services provided since February 1, 2025. Specifically, attorney Michael Evans requests 8.2 hours at a rate of $295 per hour. Evans Aff. ¶¶ 4-6 (doc. 22-1). In support of the attorney fees requested, plaintiffs have submitted an itemized list of the work he undertook in this case during the relevant period. Evans Aff. Ex. 1 (doc. 22-2). The work does not appear excessive or duplicative. Mr. Evans also notes his experience in the field from which the Court gleans that the requested hourly rate is below the mean/median rate for Portland attorneys with the same level of experience. Evans Aff. ¶¶ 2-3, 6 (doc. 22-1). The Court therefore finds the hours expended and requested rate reasonable, such that plaintiffs are awarded an additional $2,419 in attorney fees.

## RECOMMENDATION

For the foregoing reasons, plaintiffs' Second Motion for Default Judgment (doc. 22) should be granted, and damages and attorney fees should be awarded in the sum of $30,095.44.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 16th day of September, 2025.

                                                /s/ Jolie A. Russo
                                                Jolie A. Russo
                                         United States Magistrate Judge